THE STATE, EX REL. BRITT, PRESIDING JUDGE, ET AL., *v.*
BOARD OF COUNTY COMMISSIONERS, FRANKLIN COUNTY, ET AL.

[Cite as State, ex rel. Britt, *v.* Bd. of Franklin Cty. Commrs. (1985),
18 Ohio St. 3d 1.]

(No. 85-397—Decided May 30, 1985.)

*Michael Miller,* prosecuting attorney, *Patrick E. Sheeran, Duke Thomas, Dale Williams, Jr.,* and *Karen L. Martin,* for relators.

*Squire, Sanders & Dempsey, Thomas E. Palmer* and *John R. Gall,* for respondents.

*Per Curiam.* The principles of law which are applicable to the case in controversy have been previously set forth by this court on numerous occasions. The underlying rationale gleaned from our past decisions is, quite simply, to secure the preservation of judicial autonomy. As this court recently stated in *State, ex rel. Arbaugh,* v. *Richland Cty. Bd. of Commrs.* (1984), 14 Ohio St. 3d 5, at 6, "[w]e recognize that the power to control what a court spends, or to totally regulate the process of obtaining funds, ultimately becomes the power to control what the court does. Such a principle is an anathema to an independent judiciary."

A court of common pleas possesses inherent authority to require funding for its services at a level that is both reasonable and necessary to the administration of the judicial process. *State, ex rel. Rudes,* v. *Rofkar* (1984), 15 Ohio St. 3d 69, 71-72. In turn, the board of county commissioners must provide the requested funds, unless the commissioners can establish that the court abused its discretion in submitting a budget which is unreasonable and unnecessary. *State, ex rel. Giuliani,* v. *Perk* (1968), 14 Ohio St. 2d 235, 237 [43 O.O.2d 366]; *State, ex rel. Foster,* v. *Bd. of Cty. Commrs.* (1968), 16 Ohio St. 2d 89, 90 [45 O.O.2d 442]; *State, ex rel. Johnston,* v. *Taulbee* (1981), 66 Ohio St. 2d 417, 422 [20 O.O.3d 361]; *State, ex rel. Durkin,* v. *Youngstown City Council* (1984), 9 Ohio St. 3d 132, 134; *Arbaugh, supra,* at 6. The burden of proof is clearly upon the party who opposes the allocation of funds. *State, ex rel. Musser,* v. *Massillon* (1984), 12 Ohio St. 3d 42; *Rofkar, supra,* at 72.

While the above is a restatement of the general law in this area, we have also recognized some additional factors which must be considered by a reviewing court. In this budgetary and funding process, we have noted that a tripartite balance of power must exist and should be respected by each branch of government. Although it is not mandatory for courts to strictly adhere to budgetary procedures, this court stated in *Arbaugh, supra,* at 6, "* * * it is axiomatic that a court should cooperate, whenever possible, with the legislative budget process." Moreover, we have never suggested that a court has unfettered discretion to act without reason in composing its budget. It was in this spirit of separation of powers that we promulgated a test of "reasonableness and necessity" to maintain the respective sovereignty of each branch of government when a budget conflict arises. *Id.*

This standard of review necessarily entails a determination as to whether the court of common pleas abused its discretion in requesting budgetary amounts. We recognize that this standard is difficult to apply in many instances. However, it is clear that when a court commits an abuse of discretion, the general purpose of the rule of judicial budgetary supremacy is disserved; *i.e.,* the constitutionally mandated balance of powers between the branches of government is tipped so that the judicial branch assumes unbridled control over the authority and duty of the legislative branch to manage the budget.

In an effort to satisfy its burden of proof, respondent has submitted evidence relating to the financial difficulties that the county is experiencing and certain data concerning the budgetary requests of all county departments, the amounts of which are considerably more than the anticipated revenues. On January 1, 1985, respondent received from the Office of the Budget Commission of Franklin County the Amended Official Certificate of Estimated Resources for the county in 1985. Pursuant to that certificate, the county's general fund will have approximately $68,235,622.94 available to it for 1985. This is approximately $235,958 less than the amount expended in the county's 1984 budget.

In the first two months of 1985, the commissioners reviewed all 1985 budget requests from the county's general fund departments and held hearings concerning those requests. In addition to the relators, many agencies expressed the need for significant increases in their budgets for many purposes, including the provision of pay raises to their employees. Several departments explained that the increase in wages was necessary in order to become competitive with other central Ohio governmental units, as well as governmental agencies in comparable Ohio counties. Despite the fact that the budget commission anticipated county revenues of about $68,000,000 to allocate among county departments, the total budget request made by all departments exceeded $80,000,000.

This court has repeatedly stated that claims of governmental hardship, standing alone, are not determinative as to whether a court has committed

an abuse of discretion in the budgetary process, and that such claims are but one relevant factor. Respondent has advanced data relative to the relators' budget request which we deem pertinent. In 1984, relators operated on a budget of $3,364,212. The order which relators issued on March 4, 1985 mandated an appropriation of $4,066,508. This represents an increase of $702,296, or 20.8 percent over the 1984 budget. Of this augmentation, $547,951 represents the amount for increased compensation and benefits to court employees. This represents an average pay raise of 25.3 percent.[1]

There seems to be no argument by the parties herein that the employees in all job classifications within the court are entitled to an increase in salary. Admittedly, relators had not sought substantial employee salary increases for a number of years, but attempted to catch up these salaries in one year's budget — that as submitted in 1985. This presented a difficult, if not impossible, impasse. While we fully recognize the need to bring the wages of court employees into a fair competitive stance with those serving in comparable positions with other jurisdictions, reasonable discretion must be utilized in the establishment of such salaries.

Upon review of all of the evidence before us, we conclude that the overall budget relative to court personnel was unreasonable and unnecessary in that, in many categories, the level of increases was at, or

---

[1] Specifically, as to job categories, the evidence establishes that relators requested rather significant increases in a number of job classifications. The court raised the salaries of all legal and judicial secretaries to a single level of $20,618 annually, regardless of time in service. This represents a 30.85 percent average pay increase over 1984 salaries. In one instance, the increase amounted to 56.4 percent.

By way of contrast, the salary survey on which the court based its pay increase, submitted as part of the appendix to relators' brief, shows that no other metropolitan court of common pleas pays all of its secretaries at such a level. The following is a list of comparative counties:

| | |
|---|---|
| Cuyahoga County | $15,000 - 23,600 |
| Hamilton County | 15,216 - 21,167 |
| Lucas County | 10,764 - 14,040 |
| Montgomery County | 14,047 - 17,099 |
| Stark County | 12,085 - 15,122 |
| Summit County | 9,985 - 16,225 |

In addition, the court provided its bailiffs with increases that averaged 43 percent of their 1984 salaries by raising their wages to $26,234. In two instances this represented a 74.9 percent increase and in five other instances a raise of 54.3 percent was to take place. The court's own salary survey of other metropolitan area courts in this regard was as follows:

| | |
|---|---|
| Cuyahoga County | $28,580 |
| Hamilton County | 23,629 - 28,354 |
| Lucas County | 11,237 - 14,040 |
| Montgomery County | 17,929 - 21,823 |
| Stark County | 14,373 - 17,992 |
| Summit County | 18,471 - 22,028 |

The court did not give the probation officers raises which would put them all at the same pay level. Instead, each individual was given a proportional raise. The range of annual salaries is $17,342 - $38,116. The average raise was 24 percent. One officer was provided a

greater than, the highest level of compensation provided in other counties and these increases were attempted to be accomplished in one year. We feel that some measured increases in all of the categories would indeed be reasonable, and would be necessary to retain the quality of employees currently in the Franklin County Court of Common Pleas. Conversely, however, we are unable to conclude that the unusually high percentage of increases as contained within the budget submitted by relators was reasonable and necessary to retain the employees. It would seem that a more reasonable approach to bring the salaries of court staff into alignment with other jurisdictions would be to do so by annual increments rather than by one large increase.

We, therefore, deny the writ as requested, but also feel it necessary to make a few additional comments. First, although we have found the total budget as submitted to be unreasonable and unnecessary, an increase of all employees' salaries is clearly warranted. The court should immediately reevaluate its budget requests in all categories. Upon reevaluation, an amended budget should be promptly submitted to the board of commissioners. The latter, upon receipt of the amended budget, shall review it and immediately take all reasonable and necessary steps in order to provide the funds as requested by relators within the adjusted budget.

*Writit denied.*

---

43.4 percent raise, one a 32.2 percent increase, six a 30 percent raise, and three a 27 percent raise. Except for one lone officer, all officers were given at least 13.7 percent increases. Again, by contrast, other metropolitan courts indicated the following ranges in the salary survey:

| | |
|---|---|
| Cuyahoga County | $12,000 - 36,320 |
| Hamilton County | 20,706 - 31,456 |
| Lucas County | 16,120 - 23,920 |
| Montgomery County | 17,075 - 26,525 |
| Stark County | 14,373 - 23,941 |
| Summit County | 14,228 - 23,089 |

The salary of the administrative director was increased from $32,292 in 1984 to $50,960 in 1985, which represents a 57.8 percent increase. His counterparts earn as follows:

| | |
|---|---|
| Cuyahoga County | $47,320 |
| Hamilton County | 40,150 - 48,180 |
| Lucas County | 28,340 - 34,000 |
| Montgomery County | 42,541 - 57,440 |
| Stark County | 26,374 - 37,877 |
| Summit County | 27,581 - 33,197 |

Finally, the court increased the salaries of its assistant court reporters an average of 36.34 percent to a range of $22,074 - $28,990. One of the reporters received a 50.5 percent raise. The salary survey shows the following:

| | |
|---|---|
| Cuyahoga County | $28,330 |
| Hamilton County | 18,145 - 24,155 |
| Lucas County | 19,240 - 20,800 |
| Montgomery County | 19,765 - 24,058 |
| Stark County | 17,992 - 23,941 |
| Summit County | 19,282 - 23,089 |

SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C.J., concurs in judgment only.

W. BROWN and DOUGLAS, JJ., separately dissent.

W. BROWN, J., retired, of the Supreme Court of Ohio, sitting for Wright, J.

DOUGLAS, J., dissenting. I respectfully dissent. In reading the majority opinion, and more specifically the last sentence thereof, it would seem that, in effect, this court is granting half a writ. To instruct relators to reevaluate their budget request and then to instruct respondents that they "* * * *shall* review it [amended budget] and *immediately* take all reasonable and necessary steps in order to *provide the funds as requested by relators* within the adjusted budget" (emphasis added) sounds like the respondents must approve whatever sum the relators subsequently request so long as the requested amount is something less than the $4,066,508 that relators have already determined is reasonable and necessary to carry out the mandated functions of the Court of Common Pleas of Franklin County. If I thought this approach would work and would terminate further litigation and controversy between the parties, then I would reluctantly concur with the majority opinion. My fear, based upon a number of other cases decided by this court and the politically sensitive relationships between some courts and some legislative authorities across this state, leads me to believe that as unpalatable as it might be, the better course of action for this court is to simply say "writ allowed," thereby following substantial past precedent of this court, or to say "writ denied" and explain that this court has reversed direction for whatever reason it is so doing. To try to accomplish both goals by first explaining that the legislative authority must do certain things in accordance with the demands and the needs of the court, and then ultimately denying the writ, seems to be incongruous.

This court has, time and time again, espoused the principle that it is imperative that we have a judicial system and a judiciary that are independent of the other branches of government. The preservation of judicial autonomy is not fostered when the legislative authority is permitted the power to control what a court spends in carrying out its constitutional and statutory-mandated responsibilities. In the case before us, the relators have spelled out in precise terms what is needed for the operation of the court and its related functions. Further, relators have certified that the sums requested are both reasonable and necessary to the functioning of the court. In reply, the respondents and the majority of this court have decided that certain salary levels are excessive and thus should be reviewed with the end in mind that the classifications complained of should

be adjusted to some other, unannounced, figures. Such decision places this court in the position of, in effect, setting salary levels for specific court officials. I do not view that to be our function nor within our authority.

As early as *State, ex rel. Giuliani,* v. *Perk* (1968), 14 Ohio St. 2d 235 [43 O.O.2d 366], and as late as *State, ex rel. Arbaugh,* v. *Richland Cty. Bd. of Commrs.* (1984), 14 Ohio St. 3d 5, this court has held in a long line of cases that it is incumbent upon the legislative authority to provide the funds which are reasonable and necessary to operate the requesting court. Here the respondents have said that the funds requested are excessive because certain salaries were increased by the relator judges by percentages that are unreasonable. This, of course, ignores the fact that a number of the complained of salaries have not been increased for a substantial period of time. In addition, the argument ignores the fact that the respondents appropriated *less* for the court operation in 1985 than was appropriated and expended for the operation of the court in 1984. This decrease amounts to four percent. This certainly raises the presumption that the contentions of respondents are not based just on the philosophical "reasonable and necessary" argument. It appears that the sole objection is one based upon the lack of funds and if this court begins to accept this argument as the basis of funding for the judiciary, the independence so necessary and prized will be forever lost.

Accordingly, based upon reason, logic, necessity, and past precedent, as well as political reality, I would allow the writ.

WILLIAM B. BROWN, J., dissenting. Simply put, this case is a battle of political activism relative to separation of powers of government, a battle which has been perpetuated during my thirty years of judicial experience. During my twelve years on the Ohio Supreme Court, we have heard various appeals of the same kind and have consistently recognized that the independence of the judiciary is closely tied to fiscal considerations and necessities. As far as I am concerned, the writ should issue in this case and elected officials should forget their petty grievances. After all, both litigants are elected and want the best for their constituents, *i.e.,* the citizens of Franklin County and of Ohio.