[Cite as *State ex rel. Lohn v. Medina Cty. Bd. of Commrs.*, 124 Ohio St.3d 241, 2009-Ohio-6851.]

THE STATE EX REL. LOHN *v.* MEDINA COUNTY

BOARD OF COMMISSIONERS ET AL.

[Cite as *State ex rel. Lohn v. Medina Cty. Bd. of Commrs.*,

**124 Ohio St.3d 241, 2009-Ohio-6851.]**

*Mandamus to enforce funding request by judge — Writ granted in part and denied in part.*

(No. 2009-0892 ─ Submitted December 21, 2009 ─ Decided

December 24, 2009.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** This is an original action by a judge for a writ of mandamus to compel a county board of commissioners and its individual commissioners to appropriate reasonable and necessary funding for the probate and juvenile courts as reflected in the courts' funding order for 2009. Because the board and county commissioners established that the judge abused his discretion by ordering unreasonable and unnecessary funding in part, we grant a writ of mandamus for only $12,800 of the additional funding ordered. We deny the writ for the remaining additional $64,429.91 of the funding order.

**Facts**

**{¶ 2}** Relator, Judge John J. Lohn, is the judge of the Medina County Court of Common Pleas, Probate and Juvenile Divisions. Judge Lohn's budget includes the Medina County Juvenile Detention Center, which provides a secure facility to house youths who are awaiting disposition by the juvenile court or are placed there as part of a dispositional order.

**{¶ 3}** In October 2008, the American Correctional Association Commission of Accreditation for Corrections ("ACA"), a nongovernmental professional association, audited the detention center and determined that it was not in compliance with the standard that compensation and benefit levels for all facility personnel be comparable to those for similar occupational groups in the state or region. The ACA concluded that the compensation for corrections officers at the juvenile detention center, who had a starting pay rate of $11.50 per hour, was substantially less than that of corrections officers at the county jail, who worked only 300 yards away and earned $17.40 per hour. The ACA is paid by the county to ensure that the county maintains the highest standards in the juvenile-corrections field. It was later determined that corrections officers at the jail actually earned a starting salary of $16.17 per hour instead of the $17.40 per hour mentioned in the ACA's report. In addition, the corrections officers employed at the county jail are represented by a union under a collective-bargaining agreement, while the corrections officers at the juvenile detention center are not.

**{¶ 4}** The detention center is staffed with 23 full-time corrections officers and two part-time officers. The average turnover for these corrections officers has been about 50 percent per year. Six corrections officers left their employment with the detention center in 2009. According to Judge Lohn, the lack of adequate salaries has already affected security at the detention center because highly trained persons left, reducing the level of experienced personnel. At the beginning of 2009, however, the Medina County sheriff reduced his staff by 18 employees, including ten full-time corrections officers and one part-time corrections officer. The unions representing the sheriff's employees, including the corrections officers employed at the county jail, later voted to rescind a previously negotiated 3 percent salary increase to avert the layoff of additional employees.

2

**{¶ 5}** For 2008, respondent Medina County Board of Commissioners appropriated $1,012,551 for detention center salaries and $33,000 for detention center equipment.

**{¶ 6}** In November 2008, Judge Lohn submitted his proposed 2009 budget for the probate and juvenile courts, including the detention center, to respondent Medina County Board of Commissioners. Judge Lohn's budget request included $1,102,294.91 for detention center salaries as well as a request for $23,800 for the detention center's equipment, including an upgrade to an existing computer system.

**{¶ 7}** The requested salaries included a 2.5 percent cost-of-living adjustment for all county employees that Judge Lohn believed had been authorized by county officials, with an additional $1 per hour increase in the salaries of corrections officers at the juvenile detention center as part of a three-to-five-year plan to make the salaries of those corrections officers comparable to the salaries of the corrections officers at the jail. In preparing the budget request, the superintendent of the detention center also compared the salaries there with those of comparable detention centers throughout the state and determined that some detention centers paid their corrections officers more than the amount being paid to detention center corrections officers in Medina County and some paid less.

**{¶ 8}** In December 2008, a $33,000 surplus in the 2008 line item for employees of the juvenile detention center was used to give them a 2.5 percent raise. This raise, however, had not been considered in calculating the budget request, which had been made in November. Although at times referred to as a raise, the court's distribution of the surplus could be more appropriately viewed as a year-end bonus. Judge Lohn admitted that the raise given to detention center employees in December 2008 would offset the $1 per hour raise he requested and subsequently ordered for detention center corrections officers. The court

administrator testified that the December 2008 payment would be part of the $1 per hour increase ordered by the judge.

{¶ 9}  Judge Lohn's $23,800 request for the detention center's equipment included $11,000 for a new computer server and a battery backup, $1,000 for a new dryer, $1,500 to replace a security camera, $950 for a multimedia projector, $850 for a presentation cart, $2,500 to replace two computers, $3,500 to replace five radios, $1,000 to replace chairs, and $1,500 to purchase tables, cabinets, and shelving.

{¶ 10} The server and battery backup were necessary because the current server and backup were outdated and the server was short on memory for the center's needs.  The superintendent testified that the new, high-capacity dryer was requested because of the large volume of laundry, that a day-night camera was requested to increase security outside the detention center at night, that the projector and cart were requested for in-house training, that new computers were requested as part of the network administrator's maintenance program, that the radios were being replaced to make them compatible with other county public safety agencies, that the new chairs would replace those that were broken, and that the tables, chairs, and shelving would be for a dual-purpose room to train staff and tutor youths.

{¶ 11} Because of the anticipated declines in general-fund revenues in 2009, on January 7, 2009, the board of commissioners sent letters to each of the elected county officials and requested that they review their budgets to look for possible reductions and in particular to minimize personnel costs and refrain from raising salaries.

{¶ 12} On January 9, 2009, Judge Lohn issued a funding order for the probate and juvenile courts and the detention center.  As he had previously requested, Judge Lohn ordered $1,102,294.91 for detention center salaries and $23,800 for detention center equipment.  The board subsequently appropriated

$1,037,865 for detention center salaries and $11,000 for detention center equipment. The board's appropriation included the 2.5 percent increase in salaries from the 2008 appropriation that Judge Lohn had requested and ordered, but did not include the additional $1 per hour for the corrections officers at the detention center. Judge Lohn appeared at a budget hearing before the board to explain his budget needs, but the board refused to appropriate the additional money ordered by the court, i.e., the additional $64,429.91 to cover the additional $1 per hour for corrections officers and the additional $12,800 for detention center equipment.

{¶ 13} According to the county administrator, the board did not fund the amounts ordered by Judge Lohn because it could not afford to do so, given the current economic crisis, and because the requested funding would have been inconsistent with decreases of 10 percent in the budgets of most county officials and agencies. Nevertheless, both the county administrator and the county finance director admitted that the projected surplus was about $4,000,000 in the general fund at the end of the year, and that the board could have made the appropriation ordered by Judge Lohn.

{¶ 14} For the $23,800 ordered for the detention center equipment, the county administrator claimed that the board focused on affordability, and the administrator had no opinion about the reasonableness of the amount requested. The county finance director mentioned that Judge Lohn might use money from the court computerization fund for one of his equipment requests, but he did not know whether the judge could legally use the fund to pay for computers at the juvenile detention center. The finance director's opinion that Judge Lohn's salary request for detention center employees was unreasonable was based solely on the county's financial situation.

{¶ 15} On May 15, 2009, Judge Lohn filed this action for a writ of mandamus to compel respondents, the board and its commissioners, to

appropriate the amounts ordered. After respondents filed an answer, the matter was submitted to mediation and ultimately returned to the regular docket. We granted an alternative writ, and the parties submitted evidence and briefs.

{¶ 16} This cause is now before the court for our consideration of the merits.

### Legal Analysis

*Mandamus: General Standards for Funding Orders*

{¶ 17} Judge Lohn requests a writ of mandamus to compel the board and its commissioners to obey his funding order for the juvenile detention center for 2009. In resolving this claim, we follow the general standards set forth in *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 25-26:

{¶ 18} " 'It is well settled that mandamus is an appropriate vehicle for enforcing a court's funding order.' *State ex rel. Donaldson v. Alfred* (1993), 66 Ohio St.3d 327, 329, 612 N.E.2d 717. Common pleas courts and their divisions have inherent power to order funding that is reasonable and necessary to the courts' administration of their business. *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 511, 651 N.E.2d 937 (probate court); *State ex rel. Lake Cty. Bd. of Commrs. v. Hoose* (1991), 58 Ohio St.3d 220, 221, 569 N.E.2d 1046 (juvenile court). 'In turn, the board of county commissioners is obligated to appropriate the requested funds, unless the board can establish that the court abused its discretion by requesting unreasonable and unnecessary funding.' *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.* (2000), 90 Ohio St.3d 55, 60, 734 N.E.2d 811; *State ex rel. Avellone v. Lake Cty. Bd. of Commrs.* (1989), 45 Ohio St.3d 58, 61, 543 N.E.2d 478.

{¶ 19} "In effect, the courts' funding orders are presumed reasonable, and the board must rebut the presumption in order to justify its noncompliance with these orders. *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.* (1991), 62 Ohio

St.3d 204, 205, 580 N.E.2d 1090. 'This presumption emanates from the separation-of-powers doctrine because courts must be free from excessive control by other governmental branches to ensure their independence and autonomy.' *Wilke*, 90 Ohio St.3d at 60-61, 734 N.E.2d 811."

{¶ 20} With these standards in mind, we next address the merits of Judge Lohn's mandamus claim.

*Reasonableness of Funding Order*

{¶ 21} In their attempt to rebut the presumed reasonableness of Judge Lohn's funding order for the juvenile detention center for 2009, the board and commissioners assert that he abused his discretion in requesting amounts for detention center salaries and equipment that exceeded by $77,229.91 the sums appropriated by the board. Absent an abuse of discretion by Judge Lohn, "the Board of County Commissioners is obligated to appropriate annually such sum of money as will meet all the administrative expenses of such court which the judge thereof deems necessary, *including such salaries of court appointees as the judge shall fix and determine*." (Emphasis added.) *State ex rel. Ray v. South* (1964), 176 Ohio St. 241, 27 O.O.2d 133, 198 N.E.2d 919, paragraph two of the syllabus.

{¶ 22} The reasonableness of Judge Lohn's funding request must be determined only from a consideration of the courts' administrative needs, and the board and commissioners cannot substitute their judgment for that of the judge. *State ex rel. Hague v. Ashtabula Cty. Bd. of Commrs.*, 123 Ohio St.3d 489, 2009-Ohio-6140, 918 N.E.2d 151, ¶ 17; see also *State ex rel. Moorehead v. Reed* (1964), 177 Ohio St. 4, 5, 28 O.O.2d 409, 201 N.E.2d 594; *State ex rel. Foster v. Wittenberg* (1968), 16 Ohio St.2d 89, 45 O.O.2d 442, 242 N.E.2d 884, paragraph three of the syllabus.

{¶ 23} Judge Lohn, in his capacity as juvenile court judge, was required to include in his written request for an appropriation to the board of commissioners "such sum each year as will provide for the maintenance and operation of the

detention facility." R.C. 2151.10. Judge Lohn also appoints the superintendent of the detention center and fixes the compensation of the superintendent and other necessary employees, e.g., corrections officers. R.C. 2151.70.

*Salary Increase*

{¶ 24} The board and commissioners initially assert that Judge Lohn's January 9 funding order increasing corrections officers' salaries by $1 per hour was unreasonable and unnecessary. We agree. That request is unreasonable and unnecessary because (1) Judge Lohn's order was premised upon a factually and legally inaccurate comparison between corrections officers employed at the juvenile detention center and corrections officers employed at the county jail by the sheriff, (2) Judge Lohn's order did not account for the December 2008 raise given to detention center employees, including the corrections officers, and (3) the county's fiscal situation did not support the order.

{¶ 25} As to the first reason, Judge Lohn's order was premised on the ACA audit report, which was based on an admittedly inaccurate starting salary figure for corrections officers employed at the county jail. Moreover, the comparison with county jail corrections officers was inapt because these officers, unlike the officers employed at the juvenile detention center, are represented by a union under a collective-bargaining agreement. For example, in *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 204, 206, 580 N.E.2d 1090, we rejected the county commissioners' contention that just because salaries of corrections officers in the sheriff's department had decreased, juvenile court corrections officers' salaries should be likewise decreased: "We, however, are unable to conclude just from a salary decrease in the sheriff's department, particularly one that resulted from labor negotiations and mediation, that the juvenile court employees are not now entitled to salary levels comparable to those that the sheriff's department employees previously employed." In fact, the higher salaries for county jail corrections officers arguably cannot cause any of the

8

claimed turnover of detention center corrections officers when at the beginning of 2009, the sheriff had to reduce his staff by 18 employees, including ten full-time corrections officer and one part-time corrections officer, and he also closed two pods at the jail. That is, there is no incentive for detention center corrections officers to leave their employment to join the sheriff's department if there are no jobs available there. In addition, the unions representing sheriff's employees, including corrections officers, voted to rescind a negotiated 3 percent salary increase for 2009 to avoid the layoff of more employees.

{¶ 26} Second, Judge Lohn conceded in his deposition that the raise or bonus given to detention center employees in December 2008 out of the surplus left from the 2008 appropriation for salaries should offset the $1 per hour salary increase he requested and ordered for detention center corrections officers in 2009. In fact, Judge Lohn did not even know about the year-end bonus until June 2009, when he heard about it at a mediation conference.

{¶ 27} Finally, when these factors are considered together with the county's declining financial situation, we conclude that the salary-increase portion of Judge Lohn's funding order is unreasonable and unnecessary. See *State ex rel. Britt v. Franklin Cty. Bd. of Commrs.* (1985), 18 Ohio St.3d 1, 3-4, 18 OBR 1, 480 N.E.2d 77 (although claims of governmental hardship are not determinative, they are a relevant factor in determining whether a court abused its discretion in determining its budget request). The requested salary increase here distinguishes this case from our recent decision in *Hague*, in which the board of commissioners' *reduction* in funding left the judge in that case with "the dilemma of closing either the detention center or the clerk's offices of the probate and juvenile courts." 123 Ohio St.3d 489, 2009-Ohio-6140, 918 N.E.2d 151, at ¶ 26. No such dire consequence arises from the board's denial of Judge Lohn's salary increase here.

*Equipment*

**{¶ 28}** For the detention center equipment, Judge Lohn did not abuse his discretion in requesting and ordering $23,800. The county administrator testified that he had no opinion about the reasonableness of the amount requested. And although the county finance director testified that he believed that Judge Lohn could have used money in a court computerization fund for these expenses, he did not know whether Judge Lohn could legally do so, and he did not specify the amount of money available in the fund. See R.C. 2151.541 and 2153.081 (authorizing juvenile court judge to assess fees to generate additional funds to computerize the court and to make available computerized legal-research services). The court administrator testified that she did not believe that there was much money in the fund, because it had been used to purchase scanning equipment. In any event, much of the requested sum for detention center equipment was not even for computer equipment.

**{¶ 29}** The board and commissioners' "reliance on evidence that other county departments did not complain about their reduced funding does not mean that [the judge's] funding orders were unreasonable." *Hague*, 123 Ohio St.3d 489, 2009-Ohio-6140, 918 N.E.2d 151, ¶ 25. That is, this evidence does not bear upon the dispositive inquiry concerning Judge Lohn's administrative needs for the juvenile detention center. Id. at ¶ 17; *State ex rel. Milligan v. Freeman* (1972), 31 Ohio St.2d 13, 18, 60 O.O.2d 7, 285 N.E.2d 352.

**{¶ 30}** Finally, the board and commissioners claim that the requested additional funds for equipment are unnecessary because as of October 28, 2009, Judge Lohn still had sufficient money available. We rejected a similar claim in *Hague*, at ¶ 34, by reiterating that "[o]ur precedent requires evaluation of the propriety of the court's funding request as of the time the judge makes it." See also *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 46. Because the board and commissioners had a duty to appropriate the requested funds for the equipment to Judge Lohn when he issued

his funding order in January 2009, "their duty to do so has not dissipated with the passage of time." *Hague* at ¶ 34.

**{¶ 31}** Therefore, the board and commissioners have failed to rebut the presumption that Judge Lohn's budget order for equipment for the juvenile detention center was reasonable and necessary.

### Conclusion

**{¶ 32}** The evidence establishes that Judge Lohn abused his discretion by ordering the board of commissioners to appropriate the requested additional $64,429.91 to cover the $1 per hour increase in salaries because it was based on a legally and factually flawed comparison and the deficiency had been offset by a year-end bonus. The board and commissioners' appropriation of a smaller amount for salaries than that ordered was thus appropriately based on an analysis of the needs of the juvenile detention center rather than an arbitrary determination. Cf. *Hague*, 123 Ohio St.3d 489, 2009-Ohio-6140, 918 N.E.2d 151, ¶ 36, citing *Maloney*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 44. We thus deny the writ of mandamus for these funds.

**{¶ 33}** Nevertheless, for the additional $12,800 for equipment for the juvenile detention center, we grant a writ of mandamus to compel the board and commissioners to appropriate these additional funds ordered by Judge Lohn for 2009. The board and commissioners failed to rebut the presumed reasonableness of this additional amount.

**{¶ 34}** Therefore, we grant a writ of mandamus to compel the Medina County Board of Commissioners to appropriate only an additional $12,800 for 2009. We deny the writ insofar as it requested an additional $64,429.91 for salary increases for 2009.

Writ granted in part
and denied in part.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

LANZINGER and CUPP, JJ., concur in judgment only.

PFEIFER, J., not participating.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Nick A. Soulas Jr. and Patrick J. Piccininni, Assistant Prosecuting Attorneys, special counsel for relator.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, special counsel for respondents.

_____