**STATE ex rel. SMITH, Appellee,**

v.

**CULLIVER et al., Appellants.**

[Cite as *State ex rel. Smith v. Culliver*, 186 Ohio App.3d 534, 2010-Ohio-339.]

Court of Appeals of Ohio,
Fifth District, Richland County.

No. 2009–CA–0125.

Decided Jan. 28, 2010.

David L. Remy, Mansfield City Law Director, for appellee.

Frantz Ward L.L.P., Keith A. Ashmus, and Jay R. Carson, for appellants.

Gwin, Presiding Judge.

{¶ 1} This case comes to us on the accelerated calendar. The appeal will be determined as provided by App.R. 11.1. App.R. 11.1, which governs accelerated calendar cases, provides:

{¶ 2} "(C) Briefs shall be in the form specified by App. R. 16. Appellant shall serve and file his brief within fifteen days after the date on which the record is filed. The appellee shall serve and file his brief within fifteen days after service of the brief of the appellant. Reply briefs shall not be filed unless ordered by the court.

{¶ 3} " * * *

{¶ 4} "(E) Determination and judgment on appeal. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."

{¶ 5} Additionally, Loc.App.R. 6 of the Fifth District Court of Appeals provides:

{¶ 6} "(B) Pursuant to App.R. 11.1, this Court has adopted an accelerated calendar. The Court shall determine from the docketing statement whether the appeal will be assigned to the accelerated or regular calendar. If the appeal is assigned to the accelerated calendar, oral arguments shall not be scheduled and the matter will be determined upon submission of all briefs."

{¶ 7} One of the important purposes of an accelerated calendar is to enable an appellate court to render a brief and conclusory decision more quickly than in a case on the regular calendar where the briefs, facts, and legal issues are more complicated. *Crawford v. Eastland Shopping Mall Assn.* (1983), 11 Ohio App.3d 158, 11 OBR 240, 463 N.E.2d 655.

{¶ 8} This appeal shall be considered in accordance with the aforementioned rules.

## STATEMENT OF THE CASE

{¶ 9} This case originated in the court of common pleas on the complaint in mandamus of appellee, Daniel Smith, Clerk of Court of the Mansfield Municipal Court. Appellee sought a writ of mandamus compelling appellants, the mayor and city council of Mansfield, to fund his 2009 department budget request of $1,056,866. Appellants answered, asserting in principle that appellee's request was unreasonable and an abuse of discretion in light of (1) the city's financial condition, (2) the conditions in the economy, (3) comparable public and private wages, hours, and working conditions, (4) the limited resources available, and (5) appellants' duties to fund other essential or statutorily required city services.

{¶ 10} The parties submitted stipulated facts and exhibits and prehearing briefs to the trial court. The trial court heard oral argument on September 9, 2009. The trial court also allowed the parties to file supplemental briefs relating

to budgetary comparisons between the Mansfield Clerk of Court's Office and similar municipal court clerks throughout the state.

{¶ 11} On September 30, 2009, the trial court granted the writ of mandamus on the basis that, as a matter of law, appellee's requested appropriation was presumed to be reasonable, and that the mayor and city council had not demonstrated that appellee's request was unreasonable or an abuse of discretion, since it was not impossible for the city to fund the request.

### STATEMENT OF FACTS

{¶ 12} On February 10, 2009, the appellee submitted to the mayor a proposed budget for his office that contained a staff salary request of $879,000 and a total request of $1,079,866. This figure provided an across-the-board one-dollar-per-hour raise to his employees. The pay increase was instituted following a meeting that took place in 2006 between the appellee and the director of human resources for the city of Mansfield. Appellee sought at that time to bring the salaries of his employees in line with the salaries of city workers in comparable positions. The parties discussed a possible pay increase that would improve the compensation of deputy clerks without placing undue stress of the city's budget. The one-dollar-per-hour increase for the 2009 budget year was the culmination of a three-year graduated increase in compensation begun following the appellee's 2006 consultation with the city's director of human resources.

{¶ 13} On February 17, 2009, the mayor proposed a budget that showed a reduction of 40 percent in appropriations to be allotted to select city departments, including the clerk of court. On February 19, 2009, appellee submitted a revised budget proposal to the mayor that was broken down as follows:

| | |
|---|---|
| Salary | $ 96,986 |
| Staff Salary | 856,000 |
| Longevity | 28,400 |
| Training | 5,000 |
| Jury | 500 |
| Supplies | 70,000 |
| TOTAL | $1,056,886 |

{¶ 14} The actual expenditures of the clerk's office in 2008 were as follows:

| | |
|---|---|
| Salary | $ 96,986 |
| Staff Salary | 790,025 |
| Longevity | 26,350 |
| Training | 4,076 |
| Jury | 157 |
| Supplies | 83,117 |
| TOTAL | $1,000,710 |

{¶ 15} Built into the 2009 salary request was an anticipated $56,000 [1] retirement-benefit payout to a deputy clerk who was scheduled to retire in November 2009. Discounting this one-time payment, at best, the appellee's 2009 salary request was an increase of only $9,975 over his salary expenditures for 2008.

{¶ 16} On March 11, 2009, a proposed budget was submitted to city council that reflected a reduction of 30 percent in the total appropriations to the appellee. This proposed budget allotted the appellee a total appropriation of $697,336. The final version of the budget, as presented to council, on March 25, 2009, allotted the sum of $697,336 for the operation of the appellee's office. Council approved this budget on March 31, 2009.

{¶ 17} On April 17, 2009, appellee submitted a modified budget request that contained a staff salary request of $823,514 and a total request of $995,000. That modified request was never acted upon and the total appropriations allotted to the clerk of court for 2009 remained at $697,336. On May 13, 2009, this writ of mandamus action was filed.

## STANDARD OF REVIEW

{¶ 18} The appellant contends that this court's review of the trial court's grant of the writ is de novo. See *Cincinnati Entertainment Assocs., Ltd. v. Bd. of Commrs.* (2001), 141 Ohio App.3d 803, 809–810, 753 N.E.2d 884. We disagree.

{¶ 19} The case at bar involves a mixed question of law and fact. A standard of reasonableness and necessity entails a determination as to whether a clerk of municipal court abuses its discretion in requesting budgetary amounts. The reasonableness-and-necessity test seeks to maintain the respective sovereignty of each branch of government when a budget conflict arises. *State ex rel. Arbaugh v. Richland Cty. Bd. of Commrs.* (1984), 14 Ohio St.3d 5, 6, 14 OBR 311, 470 N.E.2d 880. It necessarily entails a determination as to whether, in this case, the clerk of the municipal court abused his discretion in requesting budgetary amounts. *State ex rel. Britt v. Bd. of Cty. Commrs. of Franklin Cty.* (1985), 18 Ohio St.3d 1, 3, 18 OBR 1, 480 N.E.2d 77. Since granting or denying a writ necessarily requires the lower court to exercise discretion, an appellate court must review its decision under an abuse-of-discretion standard. *Leland v. Lima,* 3d Dist. No. 1–02–59, 2002-Ohio-6188, 2002 WL 31529029, ¶ 10, citing *State ex rel. Ney v. Niehaus* (1987), 33 Ohio St.3d 118, 515 N.E.2d 914. See also *Truman v. Clay Center,* 160 Ohio App.3d 78, 2005-Ohio-1385, 825 N.E.2d 1182, ¶ 16; *State ex*

---

1. Based on calculations by the city's payroll director completed in August 2009, this figure is actually $61,274 based on a retirement date of November 2009.

*rel. Hrelec v. Campbell* (2001), 146 Ohio App.3d 112, 117, 765 N.E.2d 402, citing *State ex rel. Ney v. Niehaus* (1987), 33 Ohio St.3d 118, 515 N.E.2d 914.

{¶ 20} The term "abuse of discretion" has been applied in a somewhat rote manner by the courts without analysis of the true purpose of the appellate court's role in the review of a trial court's discretionary powers. *State v. Firouzmandi,* Licking App. No. 2006–CA–41, 2006-Ohio-5823, 2006 WL 3185175, at ¶ 54.

{¶ 21} As we noted in *Firouzmandi,* an excellent analysis of the misconception surrounding the concept of "abuse of discretion" was set forth by the Arizona Supreme Court sitting en banc: "The phrase 'within the discretion of the trial court' is often used but the reason for that phrase being applied to certain issues is seldom examined. One of the primary reasons an issue is considered discretionary is that its resolution is based on factors which vary from case to case and which involve the balance of conflicting facts and equitable considerations. *Walsh v. Centeio,* 692 F.2d 1239, 1242 (9th Cir.1982). Thus, the phrase 'within the discretion of the trial court' does not mean that the court is free to reach any conclusion it wishes. It does mean that where there are opposing equitable or factual considerations, we will not substitute our judgment for that of the trial court.' *State v. Chapple* (1983), 135 Ariz. 281, 296–297, 660 P.2d 1208. However, the court explained, '[t]he term "abuse of discretion" is unfortunate. In ordinary language, "abuse" implies some form of corrupt practice, deceit or impropriety. Webster's Third New International Dictionary (1976). In this sense, the application of the word to the act of a trial judge who ruled in accordance with all the decided cases on the issue is inappropriate. However, in the legal context, the word "abuse" in the phrase "abuse of discretion" has been given a broader meaning. In the few cases that have attempted an analysis, the ordinary meaning of the word has been considered inappropriate and the phrase as a whole has been interpreted to apply where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice. *State ex rel. Fletcher v. District Court of Jefferson County,* 213 Iowa 822, 831, 238 N.W. 290, 294 (1931). Similarly, a discretionary act which reaches an end or purpose not justified by, and clearly against, reason and evidence "is an abuse." *Kinnear v. Dennis,* 97 Okl. 206, 207, 223 P. 383, 384 (1924).

{¶ 22} "The law would be better served if we were to apply a different term, but since most appellate judges suffer from misocainea, we will no doubt continue to use the phrase 'abuse of discretion.' Therefore, we should keep some operative principles in mind. Something is discretionary because it is based on an assessment of conflicting procedural, factual or equitable considerations which vary from case to case and which can be better determined or resolved by the trial judge, who has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and who can better assess

the impact of what occurs before him. *Walsh v. Centeio,* supra. Where a decision is made on that basis, it is truly discretionary and we will not substitute our judgment for that of the trial judge; we will not second-guess. Where, however, the facts or inferences from them are not in dispute and where there are few or no conflicting procedural, factual or equitable considerations, the resolution of the question is one of law or logic. Then it is our final responsibility to determine law and policy and it becomes our duty to 'look over the shoulder' of the trial judge and, if appropriate, substitute our judgment for his or hers. This process is sometimes, unfortunately, described as a determination that the trial judge has 'abused his discretion.'" *Chapple,* 135 Ariz. at 297, 660 P.2d 1208, at fn. 8; *State v. Garza* (1998), 192 Ariz. 171, 175–176, 962 P.2d 898; *Firouzmandi,* 2006-Ohio-5823, 2006 WL 3185175, at ¶ 54–55; *State v. Saunders,* Licking App. No. 2006–CA–00058, 2007-Ohio-1080, 2007 WL 725129, ¶ 27–28.

{¶ 23} In the final analysis, regardless of whether we apply a de novo or abuse-of-discretion standard of review in this appeal, we find that the trial court did not err in granting appellee's requested writ of mandamus.

## I, II, & III

{¶ 24} In the first assignment of error, appellants contend that the trial court failed to consider the actual needs of the Mansfield Municipal Court in evaluating the reasonableness of the appellee's budget request. In the second assignment of error, appellant argues that the trial court improperly equated "unreasonableness" with "impossibility." Finally, in the third assignment of error, appellants contend that the trial court failed to consider the totality of the circumstances.

{¶ 25} Because we find that the issues raised in appellant's three assignments of error are closely related, for ease of discussion we shall address the assignments of error together.

{¶ 26} "It is well settled that mandamus is an appropriate vehicle for enforcing a court's funding order." *State ex rel. Donaldson v. Alfred* (1993), 66 Ohio St.3d 327, 329, 612 N.E.2d 717. Municipal courts and their divisions have inherent power to order funding that is reasonable and necessary to the courts' administration of their business. *State ex rel. Cleveland Mun. Court v. Cleveland City Council* (1973), 34 Ohio St.2d 120, 63 O.O.2d 199, 296 N.E.2d 544.

{¶ 27} Appellant contends that the trial court failed to consider the actual needs of the Mansfield Municipal Court in evaluating the reasonableness of appellee's budget request, and further that the trial court failed to analyze whether appellee abused his discretion under the totality of the circumstances. We disagree.

{¶ 28} R.C. 1901.31(H) provides for the compensation of deputy clerks as follows:

{¶ 29} "Deputy clerks may be appointed by the clerk and *shall receive the compensation,* payable in semimonthly installments out of the city treasury, *that the clerk may prescribe* * * *."   (Emphasis added.)

{¶ 30} Based upon this statute, the trial court in this case held that appellants were required to appropriate the funds requested by appellee for salaries for his employees unless appellants could show the request to be unreasonable.   *State ex rel. Durkin v. Youngstown City Council* (1984), 9 Ohio St.3d 132, 134, 9 OBR 382, 459 N.E.2d 213.

{¶ 31} In addition to establishing the office of the clerk, R.C. 1901.31 sets forth the powers and duties of that office.   Among the rights entrusted to the clerk by this section is the power to appoint deputy clerks who shall be compensated at a rate of pay as determined by the clerk himself.   R.C. 1901.31 (H).   In *Durkin,* 9 Ohio St.3d 132, 9 OBR 382, 459 N.E.2d 213, the Ohio Supreme Court held that the statutory language of R.C. 1901.31(H) vests sole discretion in the clerk of court over a budgeted amount needed to pay the salaries or wages of deputy clerks and that the clerk is not required to establish the reasonableness of that budgetary amount.   In fact, by virtue of the holding in *Durkin,* a city council has the duty to fund a clerk of court's request for the salaries of his deputy clerks.   Such salary requests "enjoy a presumption of reasonableness.   A [legislative] authority refusing to obey a funding [request] bears the burden to demonstrate that the [request] constitutes an abuse of discretion and is unreasonable."   *State ex rel. Donaldson v. Alfred* (1993), 66 Ohio St.3d 327, 612 N.E.2d 717.

{¶ 32} This presumption of reasonableness emanates from the separation-of-powers doctrine.   "[T]he power to control what a court spends, or to totally regulate the process of obtaining funds, ultimately becomes the power to control what the court does.   Such a principle is an anathema to an independent judiciary.   On the other hand a tripartite balance of power exists that must be respected.   To this extent it is axiomatic that a court should cooperate, whenever possible, with the legislative budget process.   Moreover, a court does not have unfettered discretion to act without reason in making its budget.   In the spirit of separation of powers we have promulgated a test of 'reasonableness and necessity' to maintain the sovereignty of our respective powers when a budget conflict arises."   *State ex rel. Arbaugh v. Richland Cty. Bd. of Commrs.,* 14 Ohio St.3d at 6, 14 OBR 311, 470 N.E.2d 880.

{¶ 33} To determine reasonableness, one of the factors that may be considered is the funding authority's financial status.   *Donaldson* at 329–330, 612

N.E.2d 717, citing *Durkin,* 9 Ohio St.3d at 134, 9 OBR 382, 459 N.E.2d 213; *State ex rel. Britt v. Bd. of Franklin Cty. Commrs.* (1985), 18 Ohio St.3d 1, 18 OBR 1, 480 N.E.2d 77. In *Britt,* the budget request called for raises that averaged 25.3 percent over a one-year period. The salaries of the court's legal secretaries were increased by an average of 30.85 percent. Those of bailiffs increased an average of 43 percent with two instances when the increase was a staggering 74.9 percent. The funding order in *Britt* increased compensation of probation officers at least 13.7 percent and court reporters an average of 36.34 percent. The court administrator received a 57.8 percent salary increase. In *Britt,* the Ohio Supreme Court rejected the Franklin County Common Pleas Court's request for long overdue and warranted court-personnel salary increases as unreasonable because the increase in a single budget year was too great and would have caused an undue strain on the county finances. Id. at 5, 18 OBR 1, 480 N.E.2d 77. In the case at bar, discounting the retirement-benefit payout for one employee, the appellee's 2009 salary request was an increase of only $9,975 over his salary expenditures for 2008.

{¶ 34} However, the Supreme Court in *Britt* noted,

{¶ 35} "While we fully recognize the need to bring the wages of court employees into a fair competitive stance with those serving in comparable positions with other jurisdictions, reasonable discretion must be utilized in the establishment of such salaries * * *. We feel that some measured increases in all of the categories would indeed be reasonable, and would be necessary to retain the quality of employees currently in the Franklin County Court of Common Pleas. Conversely, however, we are unable to conclude that the unusually high percentage of increases as contained within the budget submitted by relators was reasonable and necessary to retain the employees. *It would seem that a more reasonable approach to bring the salaries of court staff into alignment with other jurisdictions would be to do so by annual increments rather than by one large increase.*" (Emphasis added.) Id. at 4–5, 18 OBR 1, 480 N.E.2d 77. Nonetheless, the Supreme Court of Ohio also noted that upon the submission of an amended budget by the municipal court, the board of commissioners should "review it and immediately take all reasonable and necessary steps in order to provide the funds as requested by relators." Id.

{¶ 36} In *State ex rel. Moorehead v. Reed* (1964), 177 Ohio St. 4, 28 O.O.2d 409, 201 N.E.2d 594, the Supreme Court held that the required appropriations must be made even if "there are no unappropriated or unencumbered funds out of which the additional funds could be appropriated, and * * * to comply with * * * [the court's] request would work an undue hardship and burden on other offices and agencies." Id. at 6, 28 O.O.2d 409, 201 N.E.2d 594. Accord *State ex rel. Clarke v. Lawrence Cty. Bd. of Commrs.* (1943), 141 Ohio St. 16, 25 O.O. 134,

46 N.E.2d 410. In *State ex rel. Motter v. Atkinson* (1945), 146 Ohio St. 11, 14, 31 O.O. 472, 63 N.E.2d 440, the Ohio Supreme Court rejected as a defense that there was not enough money to cover relator's request and at the same time keep open and operate all the other county offices. Moreover, the Ohio Supreme Court has in the past refused to excuse a governmental body from fulfilling its mandatory duty based upon a claim of hardship. See *State ex rel. Foster v. Bd. of Cty. Commrs.* (1968), 16 Ohio St.2d 89, 91, 45 O.O.2d 442, 242 N.E.2d 884; *State ex rel. Motter v. Atkinson* (1945), 146 Ohio St. 11, 15, 31 O.O. 472, 63 N.E.2d 440. The doctrine of separation of powers requires that the funds necessary for the administration of justice be provided to the courts.

{¶ 37} However, in *State ex rel. Lohn v. Medina Cty. Bd. of Commrs.*, 124 Ohio St.3d 241, 2009-Ohio-6851, 921 N.E.2d 611, the Ohio Supreme Court held unreasonable a common pleas court's funding order providing for a one-dollar-per-hour increase in salary for corrections officers at a juvenile detention facility. The court found that the request was unreasonable and unnecessary and thus the county was not required to comply with the portion of the order providing for the increase. The court based its decision that the request was unreasonable on the fact that the judge based his request on a factually and legally inaccurate comparison between corrections officers employed at the juvenile detention center and corrections officers employed at the county jail by the sheriff, who were represented by a union. Second, Judge Lohn conceded in his deposition that the raise or bonus given to detention-center employees in December 2008 out of the surplus left from the 2008 appropriation for salaries should offset the one-dollar-per-hour salary increase that he requested and ordered for detention center corrections officers in 2009. In fact, Judge Lohn did not even know about the year-end bonus until June 2009, when he heard about it at a mediation conference. In other words, the employees had already received a pay increase and had Judge Lohn been aware of that fact he would not have made the request for the one-dollar-per-hour salary increase in his budget request. Finally, when these factors are considered together with the county's declining financial situation, the court concluded that the salary-increase portion of Judge Lohn's funding order was unreasonable and unnecessary. Id. at ¶ 27.

{¶ 38} Additionally, the Supreme Court in *Lohn* granted the writ in part in spite of the county's declining financial situation. "Nevertheless, for the additional $12,800 for equipment for the juvenile detention center, we grant a writ of mandamus to compel the board and commissioners to appropriate these additional funds ordered by Judge Lohn for 2009. The board and commissioners failed to rebut the presumed reasonableness of this additional amount." Id. at ¶ 33. For the detention center equipment, the court found that Judge Lohn did not abuse his discretion in requesting and ordering $23,800. "The board and commission-

ers' 'reliance on evidence that other county departments did not complain about their reduced funding does not mean that [the judge's] funding orders were unreasonable.' *Hague,* 123 Ohio St.3d 489, 2009-Ohio-6140, 918 N.E.2d 151, ¶ 25. That is, this evidence does not bear upon the dispositive inquiry concerning Judge Lohn's administrative needs for the juvenile detention center. Id. at ¶ 17; *State ex rel. Milligan v. Freeman* (1972), 31 Ohio St.2d 13, 18, 60 O.O.2d 7, 285 N.E.2d 352." *Lohn* at ¶ 28–29.

{¶ 39} In the case at bar, the evidence established that the appellee had instituted a three-year program to increase the salary of his staff to competitive levels with other county employees and similarly situated employees in the same capacity in other counties. In *Britt,* the court recognized the need to bring the wages of court employees into a fair competitive stance with those serving in comparable positions with other jurisdictions. The court rejected the budget request in *Britt* as unreasonable and unnecessary because "in many categories, the level of increases was at, or greater than, the highest level of compensation provided in other counties and these increases were attempted to be accomplished in one year." *Britt,* 18 Ohio St.3d at 4–5, 18 OBR 1, 480 N.E.2d 77. In fact in *Britt,* the average increase in salary was 25.3 percent over a one-year period.

{¶ 40} The court in *Britt* was careful to point out that some increase in wages was warranted in spite of the financial condition of the county. "First, although we have found the total budget as submitted to be unreasonable and unnecessary, *an increase of all employees' salaries is clearly warranted.* The court should immediately reevaluate its budget requests in all categories. Upon reevaluation, an amended budget should be promptly submitted to the board of commissioners. The latter, upon receipt of the amended budget, shall review it and immediately take all reasonable and necessary steps in order to provide the funds as requested by relators within the adjusted budget." (Emphasis added.) *Britt,* 18 Ohio St.3d at 5, 18 OBR 1, 480 N.E.2d 77. In the case at bar, discounting the retirement benefit payout for one employee, the appellee's 2009 salary request was an increase of only $9,975 over his salary expenditures for 2008.

{¶ 41} Appellants premise much of their argument on the failure of the trial court to give the proper weight to an affidavit submitted by the Honorable Jerry Ault, who is the Presiding Judge of the Mansfield Municipal Court, in which he opines as to the needs of the court. In particular, they argue that because the clerk's office is a subordinate arm of the court, Judge Ault "is the public official responsible for determining what is needed for the proper administration of justice in the Mansfield Municipal justice system. His opinion on the needs of the municipal court system is thus dispositive."

{¶ 42} However, unlike the position of the appellee in the case at bar, in *Lohn*, the judge was statutorily authorized to appoint the superintendent of the detention center and fix the compensation of the superintendent and other necessary employees, e.g., corrections officers. R.C. 2151.70. *Lohn*, 124 Ohio St.3d 241, 2009-Ohio-6851, 921 N.E.2d 611, at ¶ 23. In the case at bar, Judge Ault does not have any authority over either the appointment or the salaries of the deputy clerks. Accordingly, his opinion, although helpful and relevant, is not dispositive of the reasonableness of the appellee's budget request.

{¶ 43} The clerk of courts is an elected public official whose duties are regulated by statute. *Hackett v. Kibbee* (1965), 4 Ohio App.2d 246, 247, 33 O.O.2d 287, 211 N.E.2d 892. The office of clerk of courts, however, is an office separate and distinct from that of judge of the common pleas court. Id.

{¶ 44} The General Assembly has granted municipal court judges authority to appoint certain court employees whose compensation is prescribed by the court's legislative authority. See, e.g., R.C.1901.33(A) (interpreters, mental health professionals, probation officers, assignment commissioner, deputy assignment commissioners, other court aides, typists, stenographers, statistical clerks, and official court reporters). There are also certain municipal court employees who are appointed by the court and for whom the court may prescribe compensation. See, e.g., R.C.1901.32(A)(2) (deputy bailiffs); R.C.1901.311 (special deputy clerks to administer branch offices). If the legislature intended to allow the municipal court judge to control the appointment and the compensation of deputy clerks in this case, it certainly would have spelled that out in the statute. For example, R.C.1901.31(H) provides,

{¶ 45} "Deputy clerks of a municipal court other than the Carroll county municipal court may be appointed by the clerk and shall receive the compensation * * * that the clerk may prescribe * * * *The judge of the Carroll county municipal court may appoint deputy clerks for the court, and the deputy clerks shall receive the compensation * * * that the judge may prescribe * * *.*" (Emphasis added.)

{¶ 46} R.C. 1901.31(A)(1)(c) likewise provides,

{¶ 47} "In the Portage county and Wayne county municipal courts, the clerks of courts of Portage county and Wayne county shall be the clerks, respectively, of the Portage county and Wayne county municipal courts and may appoint a chief deputy clerk for each branch * * * and assistant clerks *as the judges of the municipal court determine are necessary,* all of whom shall receive the compensation that the legislative authority prescribes * * *." (Emphasis added.) See also R.C.1901.31(2)(c) and (d).

{¶ 48} Finally, as Justice Douglas has noted, "[I]t should be pointed out that R.C.1901.13, 1901.14, 1901.15 and 1901.16 address the powers of the municipal court and its judges. I have been unable to find in those sections or any other section the right of the judges to control, direct or otherwise interfere with the operation of the clerk's office." *State ex rel. Hunter v. Certain Judges of the Akron Mun. Court* (1994), 71 Ohio St.3d 45, 50, 641 N.E.2d 722.

{¶ 49} R.C. 1901.31 does not specifically provide that the judges of the Mansfield Municipal Court can either appoint or determine the number of deputy clerks necessary for the operation of the court. Thus, in the case at bar, although relevant and helpful, the trial court was not required to find Judge Ault's affidavit dispositive on the issue of the reasonableness of the appellant's budget request.

{¶ 50} Appellant next contends that the trial court appears to have erroneously equated "unreasonableness" with "impossibility." We disagree.

{¶ 51} In his decision in the case at bar, Judge Travis wrote, "Whether impossibility of performance remains a valid defense to an action in mandamus has been questioned, see *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 48. Assuming that impossibility of performance remains a viable defense, at a minimum, it would require a finding that to fund the expenses of the Clerk's Office could not be accomplished without taking the money from other offices and rendering those offices unable to perform their statutory duties."

{¶ 52} He further stated, "Like every other governmental entity in the United States, the City of Mansfield is suffering the effects of a global recession. However, the evidence available to the court does not indicate that if the writ were allowed, respondents would be forced to remove funding from other agencies that would cause them to violate their statutorily imposed duties. Instead, respondents will be required to reduce and curtail services that the citizens of Mansfield have enjoyed, but not to the extent that respondents will be unable to perform statutorily mandated duties."

{¶ 53} In the case at bar, appellant did not submit credible evidence that funding the appellee's budget order would render other county offices unable to perform their statutory duties. *Sherlock* at ¶ 49. As the Supreme Court noted, this failure means that appellant is " 'required to fund [the courts'] operations even if it requires the return of previously appropriated or encumbered funds, or the shutting down of other unmandated county offices or services.' " *Sherlock* at ¶ 50, quoting *State ex rel. Pike v. Hoppel* (Nov. 13, 2000), Columbiana App. No. 00 CO 34, 2000 WL 1726522.

{¶ 54} As is clear from our previous discussion, the trial court reviewed impossibility as a defense to the granting of appellee's budget request. If appellant had submitted credible evidence that funding appellee's budget request would have removed funding from other agencies that would cause them to violate their statutorily imposed duties, it is clear that the trial court would not have granted appellee's request for the writ.

{¶ 55} Upon our review of the entire record before us, it is clear that the trial court considered and addressed each of appellants' contentions of unreasonableness and an abuse of discretion. He found no merit to any of them.

{¶ 56} Accordingly, appellants' three assignments of error are overruled. Nevertheless, we advise the parties that " 'the public interest is served when courts co-operate with executive and legislative bodies in the complicated budgetary processes of government.' " *Wilke*, 90 Ohio St.3d 55, 63, 734 N.E.2d 811, quoting *State ex rel. Giuliani v. Perk* (1968), 14 Ohio St.2d 235, 237, 43 O.O.2d 366, 237 N.E.2d 397; *Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, at ¶ 58.

{¶ 57} Based on the foregoing, the judgment of the Richland County Court of Common Pleas is affirmed.

Judgment affirmed.

HOFFMAN and FARMER, JJ., concur.