[Cite as *State ex rel. Hague v. Ashtabula Cty. Bd. of Commrs.,* **123 Ohio St.3d 489, 2009-Ohio-6140.**]

THE STATE EX REL. HAGUE *v.* ASHTABULA COUNTY BOARD

OF COMMISSIONERS ET AL.

[Cite as *State ex rel. Hague v. Ashtabula Cty. Bd. of Commrs.,*

**123 Ohio St.3d 489, 2009-Ohio-6140.**]

*Mandamus to enforce funding request by judge — Writ granted.*

(No. 2009-1583 — Submitted November 18, 2009 — Decided

November 20, 2009.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1}  This is an original action by a judge for a writ of mandamus to compel a county board of commissioners and its individual commissioners to appropriate the reasonable and necessary funding for the probate and juvenile courts as reflected in the courts' funding orders for 2009.  Because the board and county commissioners failed to establish that the judge abused his discretion by ordering unreasonable and unnecessary funding, we grant the requested extraordinary relief in mandamus, but for the $109,380.20 difference between the reduced appropriation and the amount previously agreed upon by the parties in June 2009 and not the $172,860 difference the judge claims.

## I.  Facts

{¶ 2}  Relator, Charles G. Hague, is the judge of the Ashtabula County Court of Common Pleas, Probate and Juvenile Divisions.  In 2008, the actual expenditures for Judge Hague totaled $1,763,597.65, with the following amounts for his specified budget categories:  Juvenile Court – $266,818.70; Probate Court – $279,878.49; Juvenile Probation – $352,077.52; Youth Detention Center – $864,822.94.  For 2009, Judge Hague initially requested a budget of

$1,968,659.12. In November 2008, respondent Ashtabula County Board of Commissioners conducted a hearing on Judge Hague's 2009 budget request at which it advised him that due to a decrease in county revenues, all county departments had to incur significant budget cuts in 2009. In December 2008 and June 2009, Judge Hague decreased the amount of his budget request, ultimately to $1,765,141, which barely exceeded the $1,763,597.65 actually spent in 2008.

{¶ 3} By letter dated June 11, 2009, the board of commissioners offered to provide a total appropriation for the courts in 2009 of $1,665,121, to be distributed as follows: Probate Court – $255,698; Juvenile Court – $248,755; Juvenile Probation – $329,168; Youth Detention Center – $831,500. Judge Hague accepted the board's offer.

{¶ 4} Six weeks later, in July 2009, the Ashtabula County Budget Commission issued a revised certificate of estimated resources and reduced the amount of resources available for appropriations. According to Judge Hague, the board of commissioners unilaterally lowered the courts' 2009 appropriation by over ten percent, i.e., $172,860, from the sum agreed upon by the parties a few weeks before. On August 13, 2009, the board of commissioners further amended the appropriation to provide a total of $1,555,740.80 to Judge Hague, with the following amounts appropriated for the judge's budget categories: Probate Court – $230,128.20; Juvenile Court – $223,897.50; Juvenile Probation – $296,251.20; Youth Detention Center – $805,463.90. When compared to 2008 actual expenditures, this represented a decrease of about 16 percent for Judge Hague's juvenile court and juvenile probation budget categories and nearly 18 percent for the probate court. The board's reduced appropriation to Judge Hague is $109,380.20 less than the $1,665,121 amount previously agreed to by the parties in June.

{¶ 5} On August 27, 2009, Judge Hague issued probate and juvenile court orders requiring the board of commissioners to appropriate the reasonable

and necessary funds for the courts in the amount of the parties' June 2009 agreement.

**{¶ 6}** As a result of the reduced 2009 appropriation, the administration of justice of the probate and juvenile courts has been adversely affected. For example, on October 2, 2009, Judge Hague was forced to close the county's youth detention facility. The facility had originally been built in the early 1990s, when the board of commissioners and the juvenile court agreed that housing and treating Ashtabula County children in a local setting was the most effective form of treatment. No facility in any adjoining county is available to take Ashtabula County juveniles, and the lack of a county detention center severely restricts the juvenile court's ability to function. That is, it is now impossible to execute warrants for juvenile offenders, and the court's ability to enforce its own orders is severely hampered. In sum, the juvenile court cannot discharge its constitutional and statutory duties without the local detention facility.

**{¶ 7}** The reduced appropriation forced Judge Hague to close either the youth detention center or the clerk's offices for the probate and juvenile courts. The continued operation of the detention center required 22 employees and the previously agreed sum of nearly $831,500 for 2009, which was based in part on the staffing requirements of Ohio Adm.Code 5139-37-11(A)(6) (specifying certain personnel requirements for juvenile detention centers). After Judge Hague opted to close the detention center rather than the courts' clerk's offices, 20 detention center employees were laid off, and the remaining two employees were retained to perform maintenance work at the facility.

**{¶ 8}** Due to the board's reduced funding of the juvenile court, Judge Hague also laid off a part-time magistrate and placed a deputy clerk, a court reporter, and a security officer on 32-hour workweeks, with the rest of the court staff having to adjust their schedules and workloads to compensate for the lost and reduced positions. This has resulted in the juvenile court's (1) inability to

meet time limits in certain cases, (2) inability to supervise probation cases, (3) delay in the processing of filings, (4) potential loss of federal funds, and (5) reduction in the amount of revenue generated for the county through fines and court costs.

{¶ 9} Because of the board's reduction in the funding of the probate court, the court has lost two of its five clerks, one of whom retired and was not replaced, leaving a smaller staff than the court had in 1968 and severely curtailing its efficient operation. This has resulted in the probate court's being up to six weeks behind in opening new cases, holding inventory hearings, and issuing publications, which means lost revenue for the county, and the court's ability to timely process certain orders has been compromised. In addition, with fewer court personnel to schedule and hear emergency cases, senior citizens and mentally ill adults are being placed at greater risk.

{¶ 10} On September 2, Judge Hague filed this action for a writ of mandamus to compel respondents, the board and its individual commissioners, to appropriate the sum ordered by him for the reasonable and necessary funding for the probate and juvenile courts. We granted an alternative writ and issued an accelerated schedule for the submission of evidence and briefs. *State ex rel. Hague v. Ashtabula Cty. Bd. of Commrs.*, 123 Ohio St.3d 1412, 2009-Ohio-5288, 914 N.E.2d 409. The parties submitted their evidence and briefs, and we ordered the parties to submit additional evidence on certain matters. *State ex rel. Hague v. Ashtabula Cty. Bd. of Commrs.*, 123 Ohio St.3d 1485, 2009-Ohio-5935, 916 N.E.2d 482.

{¶ 11} This cause is now before us for our consideration of the merits. We do not address the merits of Judge Hague's motion for a protective order, because it is moot.

## II. Legal Analysis

*Mandamus: General Standards for Funding Orders*

{¶ 12} Judge Hague requests a writ of mandamus to compel the board and its commissioners to comply with his funding orders for the probate and juvenile courts for 2009. In resolving this claim, we are guided by the general standards set forth in *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 25-26:

{¶ 13} " 'It is well settled that mandamus is an appropriate vehicle for enforcing a court's funding order.' *State ex rel. Donaldson v. Alfred* (1993), 66 Ohio St.3d 327, 329, 612 N.E 2d 717. Common pleas courts and their divisions have inherent power to order funding that is reasonable and necessary to the courts' administration of their business. *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 511, 651 N.E.2d 937 (probate court); *State ex rel. Lake Cty. Bd. of Commrs. v. Hoose* (1991), 58 Ohio St.3d 220, 221, 569 N.E.2d 1046 (juvenile court). 'In turn, the board of county commissioners is obligated to appropriate the requested funds, unless the board can establish that the court abused its discretion by requesting unreasonable and unnecessary funding.' *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.* (2000), 90 Ohio St.3d 55, 60, 734 N.E.2d 811; *State ex rel. Avellone v. Lake Cty. Bd. of Commrs.* (1989), 45 Ohio St.3d 58, 61, 543 N.E.2d 478.

{¶ 14} "In effect, the court's funding orders are presumed reasonable, and the board must rebut the presumption in order to justify its noncompliance with these orders. *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 204, 205, 580 N.E.2d 1090. 'This presumption emanates from the separation-of-powers doctrine because courts must be free from excessive control by other governmental branches to ensure their independence and autonomy.' *Wilke*, 90 Ohio St.3d at 60-61, 734 N.E.2d 811."

{¶ 15} With these standards framing our analysis, the merits of Judge Hague's mandamus claim are next addressed.

*Reasonableness of Funding Orders*

**{¶ 16}** In trying to meet their burden to rebut the presumed reasonableness of Judge Hague's funding orders for the probate and juvenile courts for 2009, the board and commissioners assert that the judge abused his discretion by issuing his funding orders for the appropriations cut by the board of commissioners from the budget that the parties had previously agreed to in June 2009. Absent an abuse of discretion on the part of Judge Hague, "the Board of County Commissioners is obligated to appropriate annually such sum of money as will meet all the administrative expenses of such court which the judge thereof deems necessary." *State ex rel. Ray v. South* (1964), 176 Ohio St. 241, 27 O.O.2d 133, 198 N.E.2d 919, paragraph two of the syllabus.

**{¶ 17}** The reasonableness of a court's funding request "must be determined 'only from a consideration of the request in relation to the factual needs of the court for the proper administration of its business.' " *State ex rel. Milligan v. Freeman* (1972), 31 Ohio St.2d 13, 18, 60 O.O.2d 7, 285 N.E.2d 352, quoting *State ex rel. Moorehead v. Reed* (1964), 177 Ohio St. 4, 5, 28 O.O.2d 409, 201 N.E.2d 594. The board and commissioners cannot simply substitute their judgment for that of Judge Hague in these matters. *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 90 Ohio St.3d 55, 61, 734 N.E.2d 811, citing *State ex rel. Foster v. Wittenberg* (1968), 16 Ohio St.2d 89, 45 O.O.2d 442, 242 N.E.2d 884, paragraph three of the syllabus.

**{¶ 18}** The board and commissioners claim that they have rebutted the presumed reasonableness of the requesting funding because Judge Hague failed to make sufficient operational changes to reduce the courts' budget, failed to cooperate with the budget process in a timely manner, and has sufficient money to operate the courts for the remainder of 2009. These claims lack merit.

**{¶ 19}** For the board's claim that the judge failed to timely pursue various alternatives for reducing costs, Judge Hague submitted evidence that the majority of juveniles appearing before the juvenile court are indigent and that an increase

6

in court fees and costs would simply increase unpaid sums instead of increasing county revenue.

{¶ 20} In addition, the board's funding reduction for the courts decreased county revenues because of fewer court staff to timely process and resolve cases. Any further reduction in court staff would likely result in additional delay in the courts' timely resolution of cases as well as an additional reduction in revenue generated by the cases.

{¶ 21} Judge Hague also did not abuse his discretion in using his special-projects fund, which has no impact on the county's general fund, to pay for the reasonable and necessary expenses of the judge and court personnel to attend conferences at which probate and juvenile court problems are discussed. See, e.g., R.C. 2151.10 (authorizing juvenile court judge to include in court's budget "reasonably necessary expenses of the judge and such officers and employees as the judge may designate in attending conferences at which juvenile or welfare problems are discussed").

{¶ 22} Notably, the board and commissioners fail to specify any reasonable alternative for Judge Hague to reduce costs for the probate and juvenile courts that would not have been harmful to the courts' efficient operation. Moreover, Judge Hague timely investigated whether neighboring counties' youth detention facilities would take Ashtabula County juveniles.

{¶ 23} Furthermore, Judge Hague cooperated with the county's budget process by reducing his initial budget request for 2009, participating in the board's budget hearing, and eventually agreeing to the board's June 2009 offer to appropriate $1,665,121 for the courts. To be sure, " 'a reasonably exercised spirit of mutual cooperation among the branches of government is essential.' " *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 19, quoting *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 420, 20 O.O.3d 361, 423 N.E.2d 80. That is, "courts should cooperate with the

executive and legislative bodies in the budget process." *State ex rel. Mahoning Cty. Commrs. v. Maloney*, 100 Ohio St.3d 248, 2003-Ohio-5770, 797 N.E.2d 1284, ¶ 17.

{¶ 24} But " 'such voluntary co-operation should not be mistaken for a surrender or diminution of the plenary power to administer justice which is inherent in every court whose jurisdiction derives from the Ohio Constitution.' " *Wilke*, 90 Ohio St.3d at 63, 734 N.E.2d 811, quoting *State ex rel. Giuliani v. Perk* (1968), 14 Ohio St.2d 235, 237, 43 O.O.2d 366, 237 N.E.2d 397. In essence, Judge Hague was not required to agree to funding that was insufficient to cover the reasonable and necessary expenses of the probate and juvenile courts.

{¶ 25} In a similar vein, the board and commissioners' reliance on evidence that other county departments did not complain about their reduced funding does not mean that Judge Hague's funding orders were unreasonable. The board and commissioners cite seven different county departments that they claim received greater or similar cuts to their 2009 budgets. But they fail to note that at least 14 other departments received increases in their 2009 budgets or decreased funding in amounts lower than Judge Hague's budget categories for the probate and juvenile courts and juvenile probation.

{¶ 26} Finally, the board and its commissioners claim that they have rebutted the presumption that Judge Hague's funding orders are reasonable and necessary because the judge still has sufficient funds left from the reduced 2009 appropriation because the "majority of * * * expenses [were] already paid, [so that] Judge Hague could operate within the remaining * * * appropriations in the last 3.5 months of 2009." The judge's supplemental evidence, however, establishes otherwise. The board's reduced appropriation of the courts' budget left Judge Hague with the dilemma of closing either the detention center or the clerk's offices of the probate and juvenile courts. The board and commissioners

thus failed to submit sufficient evidence to counter the presumption that the ordered funds are reasonable and necessary.

{¶ 27} Even if Judge Hague has sufficient funds to operate the probate and juvenile courts for the rest of 2009, the judge's evidence refutes any argument that the courts had sufficient funds to operate in an efficient and constitutionally and statutorily required manner for the remainder of the year. To the contrary, the judge's evidence established that the timely processing of cases was being unduly delayed by the reduced funding, resulting in further decreased county revenue, and that the forced closure of the detention center left the county without an essential element of the juvenile justice system.

{¶ 28} In fact, the judge has submitted evidence that establishes that the requested funds are reasonable based on the factual needs of the courts for the proper administration of their business. *Milligan*, 31 Ohio St.2d at 18, 60 O.O.2d 7, 285 N.E.2d 352. First, the funding orders reflected the sum agreed to by the board and commissioners only weeks before the board's unilateral reduction of the courts' funding. Second, Judge Hague submitted specific evidence that the reduced funding impaired the efficient continued operation of the probate and juvenile courts, which delayed the timely hearing of cases in both courts and diminished the potential revenue generated by the cases. Third, as established by the additional evidence submitted by Judge Hague, the board's reduced funding resulted in the closure of the county's youth detention center, which limited the juvenile court's dispositional alternatives for delinquent children. See R.C. 2152.26 and Juv.R. 7. In fact, R.C. 2151.10 specifies that a juvenile court's written request for an appropriation for the reasonable and necessary expenses of the court include expenses for the "maintenance and operation of the detention facility." See also *State ex rel. Clarke v. Lawrence Cty. Bd. of Commrs.* (1943), 141 Ohio St. 16, 19, 25 O.O. 134, 46 N.E.2d 410 ("If a Juvenile Court is handicapped in its operation by a lack of funds and personnel, society may be the

loser"). Finally, the board's own study of 12 Ohio counties indicated that for 2007 and 2008, although Ashtabula County had the ninth largest population of the 12 counties, its juvenile court budget was the lowest.

{¶ 29} Therefore, the board and commissioners have failed to rebut the presumed reasonableness of Judge Hague's funding orders. None of the board and commissioners' contentions credibly accounts for the courts' demonstrated needs for their proper administration.

*Undue Hardship*

{¶ 30} The board and commissioners' remaining claim is that the requested extraordinary relief in mandamus should be denied because, due to the county's severe financial condition, complying with Judge Hague's funding orders would impose an undue hardship on other county offices.

{¶ 31} Because the board and commissioners have failed to rebut the presumed reasonableness of the probate and juvenile court funding orders, their sole claim is government hardship. But "government hardship is insufficient by itself to establish an abuse of discretion in determining the required amount of court funding." *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 43; *State ex rel. Britt v. Franklin Cty. Bd. of Commrs.* (1985), 18 Ohio St.3d 1, 3-4, 18 OBR 1, 480 N.E.2d 77; *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d at 206-207, 580 N.E.2d 1090.

{¶ 32} Moreover, the board and commissioners concede that there are sufficient funds available from the county's unencumbered cash balance to cover the additional $109,380.20 unilaterally cut from the courts' 2009 budget, as previously agreed to by the board. One of the county's early October budget projections indicated a carryover balance from 2009 to 2010 of over $1.3 million, and the supplemental evidence refers to an estimated carryover balance of over $840,000. Either estimated amount would be sufficient to cover the reasonable

and necessary sum of Judge Hague's funding orders for the probate and juvenile courts for the remainder of 2009.

{¶ 33} The board and commissioners' duty to appropriate the ordered amounts is not "vitiated by the fact that compliance with the court's requests would work an undue hardship on other offices and agencies." *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 47; *Weaver*, 62 Ohio St.3d at 208, 580 N.E.2d 1090; *Moorehead*, 177 Ohio St. at 6, 28 O.O.2d 409, 201 N.E.2d 594.  Their evidence concerning declining annual carryover balances and the importance of these balances, while relevant, does not excuse them from complying with the judge's reasonable funding orders. *Weaver*, 62 Ohio St.3d at 206-207 (board of county commissioners' evidence about county's decreased personal-property-tax revenues, declining annual carryover balances, and insufficient resources to fund appropriation requests held to be insufficient to establish abuse of discretion in juvenile court judge's determination of amount of required court funding). Therefore, the commissioners have not rebutted the presumption that the probate and juvenile court budget orders are reasonable and necessary.

*Reasonableness of Appropriation Requests Determined as of Time Submitted*

{¶ 34} Our precedent requires evaluation of the propriety of the court's funding request as of the time the judge makes it.  See *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 46.  Because we find that the board and commissioners had a duty to appropriate the requested funds to Judge Hague when he issued the funding orders, their duty to do so has not dissipated with the passage of time.  Any savings from the reduced court operations had not occurred at the time that Judge Hague issued his funding orders.

{¶ 35} In addition, any savings were obtained by detriment to the court's efficient operation and by the closure of the detention center and therefore cannot

be used to diminish the reasonable and necessary funding ordered by Judge Hague to operate the probate and juvenile courts. A contrary holding would, in essence, reward a funding authority for failing to timely appropriate the reasonable and necessary amount ordered by the court.

### III. Conclusion

**{¶ 36}** The evidence does not establish that Judge Hague acted in an unreasonable, arbitrary, or unconscionable manner by ordering the board of commissioners to appropriate the funds requested. Although the commissioners claim that they accorded the probate and juvenile courts budgetary priority, their actual appropriations indicate that many county departments and offices fared better in the board's 2009 appropriations. In effect, the appropriations were "based on an arbitrary determination rather than any analysis of the needs and programs of the courts." *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 44.

**{¶ 37}** We thus grant a writ of mandamus to compel the board and commissioners to immediately appropriate the funds ordered for 2009.

**{¶ 38}** In so holding, we are cognizant of the budgetary pressures faced by local legislative bodies like the board of commissioners. But "[w]hile we appreciate the dilemma that the commissioners encounter in promulgating a budget during difficult economic times, we are compelled to remind the commissioners that the courts must not be held hostage to competing interests when the courts, in their discretionary power, submit budgetary requests that are reasonable and necessary." *State ex rel. Rudes v. Rofkar* (1984), 15 Ohio St.3d 69, 72, 15 OBR 163, 472 N.E.2d 354, overruled in part on other grounds, *Weaver*, 62 Ohio St.3d at 207-208, 580 N.E.2d 1090. Judge Hague submitted reasonable and necessary funding orders. Although the board reduced the courts' budget $109,380.20 from the amount in the June 2009 agreement, which the board and commissioners had previously assented to, he is entitled to a writ of mandamus to

compel them to appropriate the additional funding in the amount of $109,380.20 for 2009 forthwith.  Insofar as Judge Hague requests $172,860 instead, that figure is incorrect and does not account for the board's amended August appropriation. The $109,380.20 amount will permit Judge Hague to restore the courts to the funding level that will allow the detention center to immediately reopen and the probate and juvenile courts to operate in an efficient manner.

Writ granted.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Abraham Cantor, for relator.

Johnson, Miller & Schmitz, L.L.P., Jeffrey C. Miller, Gary C. Johnson, and Nicholas J. DeBaltzo Jr., for respondents.

_____