[Cite as *State ex rel. Byers v. Carr*, 2016-Ohio-241.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio, ex rel. Judge of the
Maumee Municipal Court:  Gary L. Byers
and Maumee Municipal Court Clerk of
Court:  Sharon Thomasson

       Relators

v.

Mayor of the City of Maumee,
Richard H. Carr and Members of the
Council of the City of Maumee, et al.

       Respondents

Court of Appeals No. L-15-1258

**DECISION AND JUDGMENT**

Decided:  January 22, 2016

* * * * *

Steven P. Collier and Tammy G. Lavalette, for relators.

Beth A. Tischler, City of Maumee Law Director, for respondents.

* * * * *

**JENSEN, P.J.**

**{¶ 1}** This is an original action filed by the Judge of the Maumee Municipal Court,

Gary L. Byers, and Maumee Municipal Court Clerk of Courts, Shannon Thomasson,

("relators").  Relators seek a writ of mandamus requiring the Mayor of the City of

Maumee, Richard H. Carr, the President of the Maumee City Council, Brent Buehrer, and Maumee City Council Members, Jenny Barlos, John Boellner, Dan Hazard, Tim Pauken, Julie Rubini, and Thomas Wagener, Jr. ("respondents"), to appropriate additional funding to allow the municipal court to maintain its current level of staffing.

{¶ 2} The case is now before us on cross-motions for summary judgment filed on November 25, 2015. Each party filed a response brief on December 10, 2015. For the reasons that follow, we grant relators' motion for summary judgment, and we deny respondents' motion.

## I. Background

{¶ 3} The city of Maumee is the host community for the Maumee Municipal Court. "The Maumee municipal court has jurisdiction within the municipal corporations of Waterville and Whitehouse, within Waterville and Providence townships, and within those portions of Springfield, Monclova, and Swanton townships lying south of the northerly boundary line of the Ohio turnpike, in Lucas county." R.C. 1901.02. The city of Maumee provides the bulk of the court's funding.

{¶ 4} The court provides 24-hour, seven-day-a-week clerk service. It employs nine full-time deputy clerks of court, including a chief deputy clerk of court, who was hired effective November 16, 2015, and four part-time deputy clerks of court. Two of the full-time deputy clerks work weekday evenings and overnight shifts. The four part-time deputy clerks work the weekend shifts. The after-hours services are performed at the police station.

2.

**{¶ 5}** In 2013, the cost of the court's personnel services was $1,400,045.28. That year, 695 civil cases, 995 criminal cases, and 8,350 traffic cases were filed in the Maumee Municipal Court. The court took in criminal account receipts of $1,450,984.05. All of those receipts were disbursed to government entities, with Maumee receiving $846,365.09.

**{¶ 6}** In correspondence dated November 13, 2013, Mayor Carr suggested to Judge Byers that expenses for 2014 be reduced by eliminating one security position and eliminating the after-hours deputy clerk service, instead transferring the after-hours deputy clerks' responsibility for processing warrants to police dispatchers. He also asked that no new employees be hired in 2014. Judge Byers responded to Mayor Carr that it would create a conflict of interest for police dispatchers to process warrants.

**{¶ 7}** In 2014, the city budgeted only $1,099,940 for court personnel services—a reduction of $300,105.28 and 21.4 percent below 2013 levels. The court ran low on funding for personnel services by September of 2014, and city council appropriated additional funding. The ultimate cost for municipal court personnel services in 2014 was $1,341,404.35. That year, 696 civil cases, 1,083 criminal cases, and 7,999 traffic cases were filed in the Maumee Municipal Court. The court took in criminal account receipts of $1,473,888.55. Again, all of those receipts were disbursed to government entities, with Maumee receiving $873,027.97.

**{¶ 8}** For budget year 2015, the municipal court requested funding of $1,631,005.80, $1,398,435.80 of which was earmarked for personnel services. This

3.

increase was requested because of an anticipated retirement pay-out and a raise that resulted from the city's collective bargaining agreement. The city, however, appropriated only $1,301,150.00, earmarking only $1,090,140.00 for personnel services. The amount appropriated for 2015 personnel services was $308,294.82 less than the court requested, and $251,264.35 less than actual 2014 funding.

{¶ 9} On August 11, 2015, the city, which manages certain bookkeeping functions for the municipal court, notified city council that by August 31, 2015, the 2015 court personnel services funding would be exhausted and additional appropriations would need to be approved. The city requested an additional $112,000 to cover payroll for two additional pay periods. On August 18, 2015, city council declined to extend additional funding. Mayor Carr notified Judge Byers on August 19, 2015, that personnel funding for the court would cease as of August 23, 2015. Judge Byers responded by issuing an administrative order on August 21, 2015, requiring the city to appropriate the court's total 2015 budget request of $1,631,005.80.

{¶ 10} On August 25, 2015, city council met to discuss the court personnel funding situation. Mayor Carr recommended that the city comply with the funding order except as to payroll expenses attributable to the after-hours clerk services for the remainder of the year. That amount was estimated at $53,144.00. City council voted to accept Mayor Carr's recommendation and it appropriated an additional $276,111.80 for court operations. This meant that the city funded the court in the total amount of $1,577,861,80—again, $53,144.00 less than the amount specified in the funding order.

4.

{¶ 11} Relators filed a petition for writ of mandamus in this court on September 29, 2015, asking that we direct respondents to provide the municipal court with a total of $1,631,005.80 in operating funds for 2015. We issued an alternative writ on October 8, 2015, ordering relators to either do the act requested in the relators' petition or to file an answer within 28 days. Respondents answered on November 4, 2015. We issued a scheduling order setting a summary judgment deadline of November 25, 2015. The parties filed cross-motions for summary judgment on that date and they filed response briefs opposing each other's motions on December 10, 2015. The motions are now decisional.

{¶ 12} The parties agree that the city has a duty to appropriate the court's reasonable and necessary funding requests, however, respondents point out that the court's ability to compel funding is not unfettered. The dispute in this case centers around (1) whether relators' requests were reasonable and necessary, and (2) whether respondents appropriated proper funding for budget year 2015.

## II. Legal Standard

{¶ 13} A motion for summary judgment may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is

5.

entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 14} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts, supported by affidavit or as otherwise provided in Civ.R. 56, showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. Standard for Obtaining Relief in Mandamus

{¶ 15} "Mandamus lies when the relator demonstrates a clear legal right to the relief prayed for, the respondent has a clear legal duty to perform the act requested, and the relator has no plain and adequate remedy at law." *State ex rel. Donaldson v. Alfred*,

6.

66 Ohio St.3d 327, 329, 612 N.E.2d 717, 719 (1993), quoting *State ex rel. Westchester Estates, Inc. v. Bacon*, 61 Ohio St.2d 42, 399 N.E.2d 81 (1980), paragraph one of the syllabus.

{¶ 16} The "function of mandamus is to compel the performance of a present existing duty as to which there is a default. It is not granted to take effect prospectively, and it contemplates the performance of an act which is incumbent on the respondent when the application for a writ is made." *State ex rel. Judges of Toledo Mun. Court v. Mayor of Toledo*, 179 Ohio App.3d 270, 2008-Ohio-5914, 901 N.E.2d 321, ¶ 9 (6th Dist.), quoting *State ex rel. Willis v. Sheboy*, 6 Ohio St.3d 167, 451 N.E.2d 1200 (1983), paragraph two of the syllabus. Proof of entitlement to a writ of mandamus must be established by clear and convincing evidence. *State ex rel. Williams v. Trim,* --N.E.3d --, 2015-Ohio-3372, ¶ 16.

{¶ 17} It is well-settled that mandamus is a proper method of enforcing a court's funding order. *State ex rel. Maloney v. Sherlock,* 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 24.

### IV. Law and Analysis

{¶ 18} R.C. 1901.31(H) provides that "[d]eputy clerks of a municipal court * * * may be appointed by the clerk and shall receive the compensation * * * that the clerk may prescribe * * *." Moreover, it is within the inherent power of the courts "to effectuate the orderly and efficient administration of justice without monetary or procedural limitations by the legislature." *State ex rel. Durkin v. City Council of*

7.

*Youngstown,* 9 Ohio St.3d 132, 135, 459 N.E.2d 213 (1984), citing *State ex rel. Johnston, v. Taulbee*, 66 Ohio St.2d 417, 420-422, 423 N.E.2d 80 (1981). To that end, a court has the sole discretion to determine necessary administrative expenses and may order the funding necessary to fulfill its purposes. *State ex rel. Donaldson v. Alfred,* 66 Ohio St.3d at 329, 612 N.E.2d 717. If reasonable, its funding requests may not be refused. *Id.* Those requests enjoy a presumption of reasonableness. *Id*. "A funding authority refusing to obey a funding order bears the burden to demonstrate that the order constitutes an abuse of discretion and is unreasonable." *Id*.

{¶ 19} Again, both parties agree with these general legal principles. They disagree as to (1) whether the court's funding order was unreasonable and an abuse of discretion, and (2) whether respondents, in fact, appropriated adequate funding for relators to pay the expenses necessary to operate the court.

{¶ 20} In their motion, relators claim that their request for compensation of deputy court clerks was reasonable and necessary. They contend that the after-hours deputy clerks offer a valuable service in processing warrants beyond normal business hours, and they also perform the services provided by the daytime clerks. They insist that elimination of these services would cause an excessive burden on the already understaffed clerk's office. They reject respondents' suggestions for alternative methods of processing warrants after hours. Relators also maintain that as compared to their peer courts, their budget requests are objectively reasonable and respondents cannot meet their burden of establishing otherwise. They refute respondents' claim that they should be

8.

required to utilize funds other than those earmarked for personnel services to compensate the deputy clerks.

{¶ 21} Respondents allege in their motion that they appropriated adequate funding. They contend that a number of expenses anticipated during the 2015 budget process never materialized, thus leaving relators with more than adequate funds to compensate its deputy clerks. They complain that the court authorized unbudgeted raises and filled a position that had been vacant since 2007 at a salary far exceeding the range set forth in the court's own personnel rules. Respondents also address the after-hours services, arguing (1) the number of after-hours warrants processed since January 1, 2012, do not justify relators' staffing of the program; (2) Maumee Municipal Court is the only court in the region with a deputy clerk on duty at all times; and (3) after-hours warrants could be processed by police dispatchers or by an on-call clerk. Respondents report that the court's caseload has declined approximately 45 percent over the last 25 years, yet staffing levels have remained the same. And they claim that the city's general fund balance continues to decline and a further reduction in income tax revenue is expected, thus there would be hardship to the city in continuing to fund the court's current staffing levels.

{¶ 22} We first address the adequacy of respondents' funding of the court. We then turn to whether respondents met their burden of establishing that Judge Byers abused his discretion in issuing the funding order.

9.

## A. Did Respondents Appropriate Sufficient Funds?

{¶ 23} Respondents insist that it appropriated sufficient funds for the operation of the court. For the 2015 budget year, relators originally requested funding of $1,631,005.80, designating $1,398,435.80 for personnel services. The city appropriated only $1,301,150.00, with $1,090,140.00 designated for personnel services. In its August 21, 2015 order, the court ordered respondents to appropriate the full amount of its original 2015 budget request. Respondents ultimately appropriated $53,144.00 less than what was ordered, subtracting amounts they estimated to be attributable to the expenses of operating the after-hours services for the remainder of the year.

{¶ 24} Respondents complain that the court's funding order does not allow them to evaluate whether the amounts requested are for reasonable and necessary expenses that they are obligated to fund. They also challenge the funding order insofar as it makes no adjustments to the court's original budget request based on year-to-date spending and the court's anticipated actual year-end needs. For instance, respondents point out that a variety of expenditures anticipated by relators in their 2015 budget request were avoided. Those allegedly include $23,000 for a retirement payout that never occurred; $30,000 for public defender services that were not expended; and $10,635 for a NORIS agreement that was paid for with special funds. These never-realized expenses total $63,635—more than enough to compensate the after-hours deputy clerks. Thus, respondents argue, relators have been appropriated sufficient funds.

10.

**{¶ 25}** Similarly, respondents contend that the court had sufficient funds for payroll periods 25 and 26 due to the reallocation of unencumbered funds from other object classes. They point out that while the Maumee Municipal Court uses none of its special project or special funds for personnel expenses, peer courts that responded to requests for information indicated that they fund varying percentages of those expenses using special projects or special funds. For example, Fairfield Municipal Court uses 73 percent municipal general funds, 18 percent probation funds, and 4 percent special projects to fund personnel expenses; Shaker Heights uses special project funds to cover 1.3 percent of its personnel expenses; and Euclid uses special project funds to fund 12 percent of its personnel expenses.

**{¶ 26}** Relators counter that they should not have to raid other funds or compromise other programs to compensate the deputy clerks. They do not specifically deny respondents' assertion that after reallocating unencumbered funds, relators' payroll demands were met—even those related to after-hours deputy clerk services—however, they argue that balances change frequently and that any funds appropriated from the city's general fund not used by the municipal court are remitted to the city.

**{¶ 27}** In *State ex rel. Hague v. Ashtabula Cty. Bd. of Commrs.*, 123 Ohio St.3d 489, 2009-Ohio-6140, 918 N.E.2d 151, ¶ 34 (2009), the Ohio Supreme Court held that its "precedent requires evaluation of the propriety of the court's funding request as of the time the judge makes it." The court in *Hague*, therefore, refused to consider savings from reduced court operations that occurred after the funding order was issued. We conclude,

11.

therefore, that mandamus will not be denied to relators based on the fact that unrealized expenses resulted in funding sufficient to pay for after-hours clerk services and because they ultimately were able to make payroll for the entire year.

{¶ 28} The parties also debate whether funds appropriated later in the year to cover greater-than-anticipated health care expenses can fairly be considered in calculating the deficiency of the amount appropriated by respondents. Respondents claim that if those amounts are considered, the gap between the court's funding order and the amount appropriated totals only $8,324. We conclude that those amounts arose after the funding order was issued, they were appropriated for purposes of funding an item unanticipated at the time of 2015 budgeting, and cannot properly be considered.

### B. Did Respondents Meet Their Burden of Establishing that the Amount Demanded by the Court in its Funding Order was Unreasonable and Unnecessary?

{¶ 29} Respondents insist that after-hours clerk services, including 24/7 warrant processing, are unreasonable and unnecessary and are not utilized by peer courts or neighboring courts. They maintain that the limited number of incidents requiring after-hours attention does not justify the expense. They also claim to have suggested alternative, more cost-effective methods of providing 24-hour warrant service, such as use of an on-call clerk, the method used in Perrysburg Municipal Court, or performance of those duties by police dispatchers, as is done in Sylvania, Oregon, and Bowling Green Municipal Courts.

12.

{¶ 30} Respondents also cite to a significant decline in cases, improved court technology, and the methods by which peer courts manage the same functions as evidence that a reduction in staff could be accomplished without impacting court operations. In support of their claim that after-hours services are not reasonable or necessary, they submitted the affidavit of the support lieutenant for the city of Maumee, Division of Police. He reported that for the period of January 1, 2012, to October 5, 2015, there were 195 warrants issued after-hours for domestic violence incidents (equating to an average of less than five cases per month); 294 warrants issued after-hours for OVI (less than seven cases per month); and one warrant issued for vehicular homicide.

{¶ 31} Fairfield, Euclid, and Shaker Heights Municipal Courts responded to peer court questionnaires prepared at the request of the city and the court with the assistance of the Supreme Court Case Management Section. It was ascertained from those questionnaires that Shaker Heights Municipal Court employs 11 full-time deputy clerks of court with a base salary of $451,660; Euclid employs 11 full-time and two part-time deputy clerks of court with a base salary of $385,461; and Fairfield employs 12 full-time deputy clerks of court with salaries totaling $837,163 (which appears to include benefits). Maumee employs nine full-time and four part-time clerks of court with a base salary of $475,508. For 2014, 9,778 cases were filed in Maumee Municipal Court; 7,718 in Fairfield, 11,445 in Euclid; and 10,673 in Shaker Heights.

13.

**{¶ 32}** None of the three peer courts that responded to questionnaires offers 24-hour warrant service. Based on the lack of 24-hour warrant service in the peer courts, the methods for processing after-hours warrants employed in other suburban courts in the Toledo area, and the small number of cases in which 24/7 warrant processing has been used since January of 2012, respondents contend that relators' request for funding of the after-hours clerk service is unreasonable and unnecessary.

**{¶ 33}** In addition to the after-hours services, respondents complain that the court, immediately after submitting its budget, approved a raise to the Interim Supervision Administrator of more than $4.00 per hour, a 19.6 percent increase. They question whether the court had authority to set this employee's salary. They also complain that the court hired a chief deputy clerk—a position that had been vacant since 2007—at a salary of $80,000, even though the court personnel rules provide for a salary between $51,561 and $65,601. They acknowledge that the city is not in fiscal emergency status, but they represent that it has experienced a decrease in its fund balance and anticipate reduced income tax revenue.

**{¶ 34}** Respondents have a high standard to overcome in challenging the court's funding order. They bear the burden of establishing that the court's order constitutes an abuse of discretion and is unreasonable. *Durkin,* 9 Ohio St.3d at 134, 459 N.E.2d 213. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

14.

{¶ 35} While initially we may join in respondents' healthy skepticism about the need for after-hours clerk services based on the practices of other courts, the infrequency with which after-hours warrant processing is requested, and the court's declining caseload, relators submitted the affidavit of Thomasson, the clerk of court, who maintains that when no warrant requests are pending, the after-hours deputy clerks process court filings and complete much the same functions as their daytime counterparts. She alleges that if the after-hours services were eliminated, the clerk's office would be unable to complete its work in a timely and proper fashion unless additional staffing equivalent to the after-hours clerks was provided during regular court hours, either through additional hiring, increased overtime, or a combination of both.

{¶ 36} Respondents dispute that the after-hours deputy clerks perform solely deputy clerk functions, and claim that the after-hours staff aids the police by handling various police functions such as vehicle tow releases, finger-printing, general walk-in inquiries, and other clerical tasks for the police. Respondents cite this as further evidence that the after-hours staff is not solely performing deputy clerk functions, and is, therefore, not critical to the court's operation. However, respondents fail to provide this court with summary judgment-quality evidence of this contention. They cite only to a November 26, 2013 letter from Judge Byers, recognizing that the deputy clerks provide "clerical functions" that assist the police and save money for the city. They provide no Civ.R. 56 evidence (1) indicating to what extent the after-hours clerks provide such "clerical" services for the police division, or (2) disputing the clerk of court's contention

15.

that the services of two full-time and four part-time deputy clerks would be needed during day-time hours if the after-hours services were terminated.

{¶ 37} Without evidence that we can properly consider that may refute the clerk of court's representations that the same number of deputy clerks would be needed for the day shift if the after-hours services were eliminated, this appears to boil down to a mere scheduling issue within relators' discretion. If the after-hours clerks are performing the same tasks as their daytime counterparts, but also offer the added benefit of being available for after-hours warrant processing, it appears to us that the expenses related to the after-hours services cannot be said to be either unreasonable or unnecessary.

{¶ 38} As to the salaries of the interim supervisor and the chief deputy clerk, relators explain that the chief deputy clerk was recently hired and is expected to assume the clerk of court position in early 2016. Relators desired that there be some overlap for ease of transition, and they contend that this hiring has a negligible impact on the 2015 budget. As to the court's decision to increase the salary of the interim supervisor, relators explain that this employee, who works part-time, was given a $4.55 per hour raise because she was promoted from a non-supervisory to a supervisory role. They claim that had she not been promoted, the court would have sought to hire a full-time employee to fill the vacancy.

{¶ 39} Respondents submitted no evidence to support their suggestion that the court was without authority to issue an increase in the compensation of the Interim Supervision Administrator, and they cite nothing to convince us that relators acted

16.

unreasonably in the decision to pay the chief deputy clerk a salary outside of the court's own rules in anticipation of his imminent role as clerk of court.

{¶ 40} Finally, we agree with respondents that the financial condition of the funding authority is a factor to be considered in determining the reasonableness of the court's funding order. *Durkin*, 9 Ohio St.3d at 134, 459 N.E.2d 213. But "government hardship is insufficient by itself to establish an abuse of discretion in determining the required amount of court funding." (Internal quotations omitted.) *Hague,* 123 Ohio St.3d 489, 2009-Ohio-6140, 918 N.E.2d 151 at ¶ 31. And in this case, the city has not demonstrated that it is in the midst of a fiscal crisis.

{¶ 41} Given the standard required of respondents, we find that they have failed to establish that the court's funding order was unreasonable and unnecessary or an abuse of discretion. We, therefore, grant relators' motion for summary judgment and issue the requested writ of mandamus, thus requiring respondents to appropriate funds totaling $53,144—the amount previously withheld after the court issued its August 21, 2015 funding order. We deny respondents' motion for summary judgment.

### V. Conclusion

{¶ 42} For the foregoing reason, we grant relators' motion for summary judgment and we deny respondents' motion for summary judgment. Relators' petition for writ of mandamus is granted. Costs are assessed to respondents.

{¶ 43} **To the clerk: Manner of service.**

{¶ 44} The sheriff of Lucas County shall immediately serve upon the respondents by personal service, a copy of this writ pursuant to R.C. 2731.08.

{¶ 45} The clerk is directed to immediately serve **upon all other parties** a copy of this writ in a manner prescribed by Civ.R. 5(B).

{¶ 46} It is so ordered.

Petition granted.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.